

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

AUG 1 3 2002

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| RADIATOR SPECIALTY COMPANY, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-01-2205 |
| | § | |
| PENNZOIL-QUAKER STATE CO., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Vanessa D. Gilmore for full pretrial

management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #70). Before the court

are motions by Defendants Pandora Manufacturing, Inc. and Pennzoil-Quaker State Company

(collectively, "Defendants"), asking for a judgment on those pleadings which set out Plaintiff's

claims for unfair competition, under state and federal law, as well as other state law claims.

(Pennzoil-Quaker State Company's Motion for Judgment on the Pleadings, or Alternatively, Motion

for Summary Judgment ["Pennzoil's Motion"], Docket Entry # 57; Defendant Pandora

Manufacturing, Inc.'s Motion for Judgment on the Pleadings, or Alternatively Motion for Summary

Judgment ["Pandora's Motion"], Docket Entry # 59). In the alternative, Defendants seek a summary

judgment on those claims. Plaintiff Radiator Specialty Company ("Plaintiff," "Radiator Specialty,"

"RSC") has responded to these motions, and Defendants have replied. (RSC's Reformulated

Response to Defendants' Laches Motion ["Plaintiff's Response"], Docket Entry #92; Defendant

Pandora Manufacturing, Inc.'s Reply to RSC's Reformulated Response to Defendants' Laches

Motion ["Pandora's Reply"], Docket Entry #93; PQS's Reply to RSC's March 15 Reformulated



Laches Response ["Pennzoil's Reply"], Docket Entry #94). At a hearing before this court on January 28, 2002, it was determined that, because the parties invite the court to consider matters outside the pleadings, Defendants' motions are to be treated as ones for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. (Transcript of Motions Hearing p. 3, Docket Entry #91). The parties were given a ten-day period to supplement the record accordingly. After a review of the parties' arguments, the evidence provided, and the applicable law, it is RECOMMENDED that Defendants' motions for summary judgment be GRANTED as to Plaintiff's Lanham Act claim, but DENIED as to the state law claims. It is further RECOMMENDED that this court decline to exercise its supplemental jurisdiction over the state law claims, and that they be DISMISSED, without prejudice, so that Plaintiff may file them in state court.

**Background**

In this suit, Plaintiff alleges that Defendants are liable to it for false advertising and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the laws of the state of Minnesota. (Second Amended Complaint ¶¶ 1, 5, 6, Docket Entry #44). Radiator Specialty is a North Carolina corporation that manufactures and sells a "tire-inflator and sealer product known as 'Puncture Seal,'" and it has done so "since at least the mid-1970's." (*Id.* ¶ 15). Puncture Seal is said to be a "non-flammable, non-explosive, non-ozone depleting, and highly effective . . . tire inflator." (*Id.* ¶ 37). Because of these qualities, production costs are allegedly "significantly higher than [those of] other products on the market." (*Id.*). One of these other products, "Fix-A-Flat," was marketed by one or the other of these Defendants during the time relevant to this litigation. (*Id.* ¶¶ 13, 70, 101-02). Defendant Pandora Manufacturing, Inc. ("Pandora") is also incorporated in North Carolina and

it maintains its principle place of business in Pandora, Ohio.[1] (*Id.* ¶ 4). Defendant Pennzoil-Quaker State Company ("Pennzoil") is incorporated under Delaware law and maintains its principle place of business in Houston, Texas. (*Id.* ¶ 3).

Although Defendants' product, Fix-A-Flat, has been reformulated several times since its introduction to the market, Plaintiff's claims center entirely on the so-called "third generation" of product, which Pandora introduced in early 1994. (*Id.* ¶¶ 17, 44, 46; Pandora's Motion at 3). Plaintiff alleges that the propellant used in that product line, a chemical called dimethyl ether ("DME"), is "flammable, potentially explosive and dangerous." (Second Amended Complaint ¶¶ 27, 44, 48). Here, Plaintiff contends that Pandora advertised the third-generation product ("DME Fix-A-Flat"), in a deceptive fashion, as one that was "non-explosive, non-flammable and/or safe." (*Id.* ¶ 48). It is this contention which forms the basis of Plaintiff's state and federal claims. (*See, e.g., id.* ¶¶ 112, 116, 123, 129, 135).

On March 22, 1994, Jim Wells ("Wells"), the Vice President of Chemical Operations for Radiator Specialty, complained to Pandora that the labels on Fix-A-Flat cans described the product, improperly, as containing a "non-explosive formula." (*Id.* ¶ 51; Pandora's Motion at 3). In his letter, Wells detailed the results of testing that his company had performed on Fix-A-Flat. (Declaration of Ronald M. Weiner ["Weiner Decl."], Ex. 2: Letter from Jim Wells to Sam McGinnis [sic], Mar. 22, 1994 ["Wells Letter"], *attached to* Plaintiff RSC's Response to Defendants' Summary Judgment on Laches and Choice of Law, Docket Entry #65). These results purportedly showed that Pandora's product was "extremely flammable" and capable of "violent explosion[s]." (*Id.*). Nine days later,

---

[1] Pandora is formerly known as Snap Products, Inc., and also as Nationwide Industries, Inc. (Second Amended Complaint ¶¶ 4, 13).

Wells and another Radiator Specialty representative repeated these complaints during a meeting with Sam McInnis ("McInnis"), then president of Pandora. (Second Amended Complaint ¶ 52; Pandora's Motion at 3). Pandora responded to Radiator Specialty's allegations on April 11, 1994. (Second Amended Complaint ¶ 56). Not only did it refuse to change its marketing strategy, but it went further and "threatened RSC with legal action if [it] made any public statements that . . . Fix-A-Flat was flammable and/or explosive." (*Id.*; *and see* Pandora's Motion at 3). Despite Pandora's threat of litigation, Radiator Specialty initiated a "$2 million advertising campaign to improve sales of its tire inflators," and to educate the public about the purported explosive nature of Fix-A-Flat. (Second Amended Complaint ¶ 62; Plaintiff's Response at 6). This advertising campaign began in 1995, and it was, apparently, unsuccessful. (Second Amended Complaint ¶ 62). Plaintiff's share of the market for tire inflators fell by three percent following that ad campaign. (*Id.*).

In early 1997, Pandora deleted the reference to a "Non-Explosive Formula" from cans of its product but, according to Plaintiff, it "continued to represent . . . that its product was completely safe, non-flammable and non-explosive by numerous other means." (*Id.* ¶ 67; *and see* Pandora's Motion at 4). On November 4, 1997, Pandora sold the Fix-A-Flat product line to Pennzoil. (Second Amended Complaint ¶ 70; Pandora's Motion at 4). From that point, Pennzoil became the sole manufacturer of Fix-A-Flat products, although Pandora assisted with "administrative and sales support services" until August 15, 1998, and with "shipping and warehousing services" until March 31, 1999. (Pandora's Motion at 4). In January 1998, Pennzoil reportedly made some changes to the product formula. (Second Amended Complaint ¶ 72). Plaintiff claims, however, that Fix-A-Flat "remained flammable, potentially explosive and dangerous," but that Pennzoil continued to advertise it as "completely safe." (*Id.* ¶¶ 72, 73).

4

Radiator Specialty contends that Defendants "deceived the market to believe that Fix-A-Flat" and its own product, Puncture Seal, were equally safe tire-inflator products. (*Id.* ¶ 109). Plaintiff claims that, in truth, they were not comparable in flammability or explosive qualities. (*Id.*). It is for that reason that Radiator Specialty claims Defendants engaged in false advertising. (*Id.*). Because of this alleged false advertising, Plaintiff complains that it "lost market share and had to lower the price of Puncture Seal to the point where it barely made a profit." (*Id.* ¶ 110). It claims further that, in 1998, Target, a national retailer with its headquarters in Minneapolis, Minnesota, decided that it would no longer carry Plaintiff's product because it reported no need to stock "two 'nonflammable' tire inflators." (*Id.* ¶¶ 81, 86). Plaintiff contends that this business loss caused it to suffer "enormous[ly] . . . in the marketplace." (*Id.* ¶ 86).

Plaintiff also reports that, on February 18, 1999, Pennzoil voluntarily recalled its Fix-A-Flat products, and allegedly admitted that they "might cause tires to explode if improperly exposed to extreme heat after use." (*Id.* ¶ 91). Pennzoil replaced the recalled product with one containing the same gas propellant used in Puncture Seal, a chemical called 1,1,1,2-Tetrafluoroethane ("134(a)"). (Second Amended Complaint ¶¶ 37, 94, 95). It is uncontroverted that, "immediately after the recall," Pennzoil contacted Plaintiff to negotiate a limited license for use of the 134(a) propellant. (*Id.* ¶ 95; Plaintiff's Response at 10; Pennzoil's Motion at 7). Indeed, on February 26, 1999, Pennzoil and Plaintiff entered into a "Covenant Not to Sue," in which Pennzoil agreed to pay Radiator Specialty a fee on every can of "fourth-generation" Fix-A-Flat that contained 134(a). (*See* Covenant Not to Sue, *attached as* Exhibit A to Pennzoil's Motion). In exchange, Radiator Specialty agreed to not initiate any patent action against Pennzoil for its use of that chemical. (*See id.*). Although the covenant was to last only sixty days, Plaintiff is frank in stating that it anticipated that a longer

5

license agreement would follow.  (Weiner Decl. ¶ 41).  In fact, the covenant was extended several times, but it did ultimately expire on September 30, 2000.  (*Id.* ¶¶ 43, 45).  On that date, Pennzoil decided that its use of 134(a), in its fourth-generation product, was not infringing on the Puncture Seal patent.  (Pennzoil's Motion at 7).  Four months later, on January 31, 2001, Plaintiff filed this lawsuit in the United States District Court for the District of Minnesota.  (Complaint, Docket Entry #1).  On June 29, 2001, the Minnesota court granted Defendants' motion to transfer the matter to this district and division, for the convenience of the parties.  (Memorandum Opinion and Order, Docket Entry #35).

In its suit, Radiator Specialty alleges that, from January 1994 to February 18, 1999, Defendants made "materially false and/or misleading statements" about the safety of the third-generation Fix-A-Flat product line, and that these statements were in violation of the Lanham Act, as well as Minnesota's Deceptive Trade Practices Act, Unlawful Trade Practices Act, and Consumer Fraud Act.  (Second Amended Complaint ¶¶ 100-114; 121-138).  Plaintiff claims further that, by making these misrepresentations, Defendants interfered with its "prospective business relations with retailers, distributors, and consumers," in violation of Minnesota common law.  (*Id.* ¶ 119).  To remedy these purported harms, Plaintiff seeks "[m]onetary damages equal to Defendants' unjust enrichment from the sale of Fix-A-Flat from January 1994 through February 18, 1999"; "actual damages" from that period, "including lost market share, price erosion, lost royalties . . ., and future damages"; "increased damages equal to three times the actual damages awarded"; and trial costs, including attorney's fees and interest.  (*Id.* at 38).

In their pending motions, Defendants argue that Plaintiff "inexcusably delayed in filing suit to [their] detriment," and so the Lanham Act claim is barred by the equitable doctrine of laches.

(Pennzoil's Motion at 7; *and see* Pandora's Motion at 5).   For its part, Plaintiff contends that Defendants may not assert a laches defense because they have "unclean hands" and, further, because this suit involves "claims raising public health concerns."   (Plaintiff's Response at 15).   And even if it is otherwise proper, Radiator Specialty insists that Defendants cannot establish two essential elements of the laches defense, that is, unjustifiable delay and prejudice.   (*Id.* at 16, 19).   For the reasons set out below, the court RECOMMENDS that Defendants' motions for summary judgment on the Lanham Act claims should be GRANTED.   Because there is no other basis for subject-matter jurisdiction in this court, it is further RECOMMENDED that Plaintiff's state law claims be DISMISSED, without prejudice.

**Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c).   Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);   *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).   The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.   *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).   If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.   *Id.*

When the moving party has met its Rule 56 burden, the nonmovant cannot survive a motion for summary judgment by resting merely on the allegations in its pleadings.   *McCallum Highlands,*

*Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). The nonmovant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075. But, in deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Little*, 37 F.3d at 1075.

**Discussion**

***The Lanham Act Claims***

Plaintiff alleges that, at least from January 1994 until November 1997, Pandora made false claims about the safety of the third-generation Fix-A-Flat product line. (Second Amended Complaint ¶¶ 102, 104-05). It alleges further that from 1997, after Pandora transferred the ownership of that line, Pennzoil continued to make similar false claims until 1999, when it changed the formula of the product. (*Id.*). Plaintiff contends that this advertising by Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (*Id.* ¶¶ 111-14). In their defense, Defendants argue that the Lanham Act claims are barred by the equitable doctrine of laches. (Pennzoil's Motion at 1; Pandora's Motion at 1).

The Lanham Act is intended "to protect persons engaged in [interstate] commerce from unfair competition." 15 U.S.C. § 1127, *quoted in Seven-Up Co. v. Coca Cola Co.*, 86 F.3d 1379, 1382 (5th Cir. 1996). In keeping with that purpose, Section 43(a) of the Lanham Act provides, in

pertinent part, as follows:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(B) (West 1998).  The United States Court of Appeals for the Fifth Circuit has found that section 43(a) protects against "'myriad . . . deceptive commercial practices,' including false advertising or promotion," and courts in this circuit construe the section broadly to effect its "remedial" purpose.  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *Seven-Up Co. v. Coca Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) (both quoting *Resource Developers v. Statue of Liberty-Ellis Island Found.*, 926 F.2d 134, 139 (2d Cir. 1991).  The crux of Plaintiff's claim here is one for false advertising, and so it must make some showing on the following elements:

> (1) . . . the defendant made a false statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result.

*Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447, 462 (5th Cir. 2001) (quoting *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1042 (8th Cir. 1999)) (internal alterations omitted); *see also Pizza Hut*, 227 F.3d at 495.

For the purposes of the pending motions, Defendants do not contest the merits of Plaintiff's Lanham Act claims.  Instead, they argue that, even if valid, those claims are barred because Plaintiff waited too long to lodge them.  (Pennzoil's Motion at 7; Pandora's Motion at 5).  They rely on the equitable defense of laches, which is "founded on the notion that equity aids the vigilant and not

9

those who slumber on their rights." *Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd.*, 40 F.3d 698, 708 (5th Cir. 1994) (quoting *NAACP v. NAACP Legal Defense & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985)). In weighing that defense, in this circuit, "[i]t is settled that a district court enjoys considerable discretion in deciding whether to apply the doctrine of laches to claims pending before it." *Id.* at 707. And, as with all other affirmative defenses, if laches is asserted in the context of a summary judgment motion, then the court must resolve all disputed material facts on the issue of laches in favor of the nonmovant. *Matter of Bohart*, 743 F.2d 313, 326 n.13 (5th Cir. 1984) (citing *Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980)). But to the extent that the facts relevant to laches are undisputed, a court's decision on that matter is subject to review for an abuse of discretion only. *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 708. Here, the parties do not dispute the facts pertinent to the issue of laches, but argue only about the legal implications to be drawn from them.

The Fifth Circuit, in concert with the majority of others, has defined laches "as an inexcusable delay that results in prejudice to the defendant." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998); *Conan Props., Inc. v. Conans Pizza*, 752 F.2d 145, 153 (5th Cir. 1985). To succeed on that equitable defense, Defendants here must persuade the court on the following factors: (1) that the plaintiff delayed in asserting its right or claim; (2) that the delay was inexcusable; and (3) that the defendant has suffered undue prejudice because of the delay. *Westchester Media*, 214 F.3d at 668; *Elvis Presley Enters.*, 141 F.3d at 205; *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.3d 1155, 1161 (5th Cir. 1982). It has been held repeatedly that laches may negate only the most dilatory actions. That is because a plaintiff's unreasonable delay

implies "consent to the defendant's conduct." *Conan*, 752 F.2d at 152. In evaluating whether a delay is reasonable, "courts typically look at the interval between the time plaintiff obtained actual or constructive knowledge of the asserted invasion of its rights and the time suit was filed." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997) (citations omitted). For example, in cases alleging trademark infringement, the "time period begins when an owner of a mark first has knowledge of the accused use." *Armco*, 693 F.3d at 1161. But "no fixed period of time [is] *per se* classified as 'unreasonable' delay; that determination rests on the circumstances of the particular case." *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F. Supp. 2d 546, 553 (S.D. Tex. 1998) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed Cir. 1992)); *see also Armco*, 693 F.3d at 1162. If a period of marked delay is found to exist, then Defendants have the further burden to show that they have been prejudiced by Plaintiff's actions. *Conan*, 752 F.2d at 152. Typically, a finding of laches will foreclose a demand for damages, although it may not bar a plaintiff's request for injunctive relief. *Id.* Central to this dispute is the fact that "[i]t is well established that laches is a valid defense to Lanham Act claims, including those for false advertising." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, — F.3d —, 2002 WL 1163624, *4 (9th Cir. June 4, 2002) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820-21 (7th Cir. 1999); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2nd Cir. 1996)). However, laches should be applied in Lanham Act cases only "so long as its application is equitable in light of the public's interest in being free from confusion and deception." *Hot Wax*, 191 F.3d at 826 (quoting *Conopco*, 95 F.3d at 193).

### 1. Pandora's Laches Defense

Pandora argues that Radiator Specialty "was aware of its claims [against it] in March 1994,

but delayed filing suit for seven years." (Pandora's Motion at 1).  Pandora contends that a seven-year delay is well beyond the permissible period in which to assert a Lanham Act claim.  (*Id.* at 7). Pandora maintains, further, that this "inexcusable delay" prejudices its ability to present a defense to the allegations, and so Plaintiff's Lanham Act claim against it should be barred.  (*Id.*).  In response, Radiator Specialty concedes that it was aware of the purported injury to its product line and, in fact, "first formally objected to [Pandora's] decision to use the 'non-explosive formula' label on DME Fix-A-Flat in a March, 1994 letter."  (Plaintiffs' Response at 4; *and see* Transcript of Motions Hearing, p. 20).  Plaintiff insists, however, that Pandora has "unclean hands," in regard to the false advertising claims, because it knew that the Fix-A-Flat advertising was deceptive. (Plaintiffs' Response at 12).  Further, Plaintiff claims that Defendants should not be allowed to raise a laches defense because the advertising at issue "adversely affected public health and safety."  (*Id.*). In reply, Pandora argues that "the unclean hands doctrine and the existence of a public health issue do not limit the application of laches in suits for monetary damages."  (Pandora's Reply at 3). Although this court does not entirely agree with Pandora's reasoning, it does find that laches is applicable to Plaintiff's claims, for the reasons discussed below.

Radiator Specialty is correct that "clean hands" are essential to a party's ability to rely on a laches defense.  *See Conan Props., Inc. v. Conans Pizza*, 752 F.2d 145, 153 (5th Cir. 1985).  Indeed, courts emphasize that "[t]he notion of unclean hands . . . stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice."  *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 825 (7th Cir. 1999).  Instead, the party raising such a defense "must have 'acted fairly and without fraud or deceit as to the controversy in issue.'"  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, — F.3d —, 2002 WL 1163624, *10 (9th Cir. June 4, 2002)

(quoting *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000)).  Here, Plaintiff

contends that Defendants have "unclean hands" because they marketed the third-generation Fix-A-

Flat products as safe, even though they "knew" that it "was actually explosive and flammable."

(Plaintiff's Response at 16).  Pandora responds to this contention by arguing merely that the relevant

precedent has not made the "doctrine of unclean hands . . . available to limit the application of laches

to claims for monetary relief."  (Pandora's Reply at 5).  On this point, Pandora argues that it is

"inequitable to allow a [plaintiff] to profit from its delay . . . by collecting damages that would have

been avoided had it promptly filed suit." (*Id.*) (citing *Brittingham v. Jenkins*, 914 F.2d 447, 457 (4th

Cir. 1990); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway and Sons*, 523 F.2d 1331,

1343 (2nd Cir. 1975)).

It is true that, in the context of trademark infringement, at least four circuit courts of appeals

have held that a plaintiff who waits several years to file suit, during which a defendant builds up its

business, may not receive an award of damages, even if the defendant was guilty of bad-faith

infringement.  *See Brittingham*, 914 F.2d at 457; *Grotrian*, 523 F.2d at 1343-44; *Anheuser-Busch*

*Brewing Co. v. Du Bois Brewing Co.*, 175 F.2d 370, 373-74 (3rd Cir. 1949); *Grove Labs. v. Brewer*

*& Co.*, 103 F.2d 175,185 (1st Cir. 1939).  In other words, a defendant's "unclean hands," with

respect to the underlying trademark infringement claim, does not preclude a laches defense when

damages for that infringing activity are sought.  Likewise, the Fifth Circuit has held that laches may

"foreclose a demand" for an accounting of profits or damages, even though the same facts do not

serve to bar a request for injunctive relief in a trademark action.  *Conan*, 752 F.2d at 152; *c.f.*

*Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 419 (1916) ("As to laches . . . it has been

repeatedly held, in cases where defendants acted fraudulently or with knowledge of plaintiff's rights,

that relief by injunction would be accorded although an accounting of profits should be denied.").

On the other hand, this circuit has not addressed the argument that a defendant with "unclean hands"

is estopped from asserting a laches defense in the context of a false advertising claim.  Of the few

courts that have considered the issue, none have found that the "unclean hands" principle is

unavailable to a plaintiff seeking damages, rather than injunctive relief, in a Lanham Act false

advertising suit.  *See Jarrow Formulas*, 2002 WL 1163624 at *10-11; *Hot Wax*, 191 F.3d at 825;

*King v. Innovation Books*, 976 F.2d 824, 833 (2nd Cir. 1992).  But, even if the principle is available

when damages are sought, courts have held clearly that, in a Lanham Act case, "a plaintiff cannot

ordinarily show unclean hands, and thereby defeat laches, simply by alleging that the defendant made

claims knowing that they were false." *Jarrow Formulas*, 2002 WL 1163624 at *11 (citing *Hot Wax*,

191 F.3d at 826).

Courts have emphasized the importance of distinguishing between "a dispute of fact

regarding the merits of a Lanham Act claim," and alleged "bad faith . . . directly bearing on the

availability of an equitable remedy such as laches."  *Hot Wax*, 191 F.3d at 826; *and see Jarrow*

*Formulas*, 2002 WL 1163624 at *10.  Certainly, it is easy to see that "conceivably all suits involving

Lanham Act claims could involve accusations of fraudulent or deceptive conduct."  *Jarrow*

*Formulas*, 2002 WL 1163624 at *10; *Hot Wax*, 191 F.3d at 826.  For that reason, a plaintiff who

seeks to "foreclose" a laches defense to a Lanham Act claim "must offer something more than mere

objective evidence" of the defendant's alleged misdeeds in violating that Act.  *Conan*, 752 F.2d at

150.  Instead, the plaintiff must present evidence that the defendant's misconduct was related to the

laches defense itself.  *See Jarrow Formulas*, 2002 WL 1163624 at *10 (citing *Precision Instr. Mfg.*

*Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *Republic Molding Corp. v. B.W. Photo*

14

*Utils.*, 319 F.2d 347, 349 (9th Cir. 1963)).  For example, in *King v. Innovation Books*, movie producers advertised a film as "Stephen King's The Lawnmower Man," and represented that it was "'based upon' a short story by King."  976 F.2d 824, 826 (2nd Cir. 1992).  Stephen King, the author of the short story with that title, alleged that this representation was misleading.  *Id.* at 828.  He claimed that, not only was he not involved in the production of the film, but that it bore only a slight resemblance to the story on which it was purportedly "based."  *Id.* at 826, 827.  King sued the producers in the district court for the Southern District of New York, and sought damages and injunctive relief under the Lanham Act.  *Id.* at 828.  The producers argued that King's claim was subject to a laches bar, but the district court agreed with the author and granted a preliminary injunction that "prohibited use of King's name 'on or in connection with' the motion picture."  *Id.* On appeal, the United States Court of Appeals for the Second Circuit held that the district court had not abused its discretion in rejecting the laches defense.  *Id.* at 832.  Among the other reasons cited, the appellate court pointed to trial evidence which showed that the defendant-producers had not allowed King to see the movie before it was released and so, in that way, had contributed to the undue delay, if any, in his initiation of the suit.  *Id.* at 832, 833.  The Second Circuit held that, in such a circumstance, "[t]his kind of 'unclean hands' behavior confirms" that it was appropriate to reject "the equitable defense of laches."  *Id.* at 833.

Because the Fifth Circuit has not ruled directly on the issue, this court finds the reasoning of the Second, Seventh, and Ninth Circuits persuasive, and agrees that, in the appropriate circumstances, unclean hands may, indeed, prevent a defendant from asserting a laches defense in responding to a false advertising claim for damages.  *See Jarrow Formulas*, 2002 WL 1163624 at *10-11; *Hot Wax*, 191 F.3d at 825; *King*, 976 F.2d at 833.  But, to prevent Pandora's assertion of a

15

laches defense here, it is not be enough for Plaintiff merely to provide evidence that Defendant acted in bad faith when it advertised its Fix-A-Flat products. *See Jarrow Formulas*, 2002 WL 1163624 at *10; *Hot Wax*, 191 F.3d at 826. Instead, Radiator Specialty must show that Pandora engaged in misconduct that is directly related the laches issue, and that the behavior was calculated to mislead or induce Plaintiff to "sit on its rights." *See Jarrow Formulas*, 2002 WL 1163624 at *10; *Hot Wax*, 191 F.3d at 826; *King*, 976 F.2d at 833. In other words, the evidence must point to alleged misconduct by Pandora that is related to Plaintiff's delay in lodging its Lanham Act claim, the reason for that delay, or the prejudice that Defendants suffered as a result of that delay. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998); *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.3d 1155, 1161 (5th Cir. 1982).

Here, in support of its argument that Pandora has "unclean hands," Radiator Specialty relies heavily on a decision from the district court of Minnesota, *Olson v. Snap Products, Inc.*, 29 F. Supp.2d 1027 (D. Minn. 1998). (Plaintiffs' Response at 16). That decision centered on allegations by Gary Olson that, in attempting to weld the rim of a tire that had been inflated with DME Fix-A-Flat, it exploded and caused him severe injuries. *Olson*, 29 F. Supp.2d at 1029. Olson sued Snap Products, Inc. ("Snap"), a predecessor to Pandora, in federal court. He made claims of unlawful trade practices and negligent misrepresentation, and argued that Snap was strictly liable for the defective product. Olson subsequently asked permission to amend his complaint and add a punitive damages claim. In considering his request, the court observed that, under Minnesota law, it was required to treat the materials Olson submitted "as *prima facie* evidence of the Defendants' 'deliberate disregard for the rights or safety of others.'" *Id*. But, in doing so, the court emphasized

16

that it was not "actually weigh[ing] the credibility, or the probative weight, of the competing contentions." *Id.* at 1033 n.1. It is clear, therefore, that, contrary to Plaintiff's assertions, the *Olson* court made no fact findings on whether the defendant knew that Fix-A-Flat was unsafe, but merely treated the evidence before it as true, a requirement of the governing law. *See id.* at 1029, 1033 n.1. This court may properly consider only the evidence before it, and not unidentified items that have been alluded to in an opinion from a different forum. Further, Plaintiff has provided no evidence, nor even an argument, that Pandora acted with "willful, egregious or unconscionable conduct or bad faith," with respect to the elements of laches, that is, Plaintiff's purported unreasonable delay in filing suit or Pandora's resultant prejudice.[2] *See Hot Wax*, 191 F.3d at 826; *Conan*, 752 F.2d at 150. On this record, the court finds no evidence of "unclean hands" on Pandora's part that bars laches as a defense to this Lanham Act claim.

Plaintiff also contends that Pandora is "precluded from . . . asserting a laches defense" because the Fix-A-Flat marketing strategy raised "public health concerns." (Plaintiff's Response at 15). In making this contention, Plaintiff cites a district court decision from New York, *American Home Products Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 591-92 (S.D.N.Y. 1987). (*Id.*). In *American Home Products*, a manufacturer of over-the-counter pain relievers sought an injunction against advertisements which exaggerated the likelihood that persons who used its products were at risk for adverse side effects. 654 F. Supp. at 591-92. In considering the motion, the district court commented that there is a "strong public interest in the prevention of misleading advertisements, . . . particularly . . . where [over the counter] drugs are concerned." *Id.* at 590. In that specific context,

---

[2] Plaintiff does make such claims against Pennzoil, in response to that Defendant's laches argument. (*See* Plaintiff's Response at 19).

the court remarked that "the defense of laches should be sparingly applied," and it granted the requested injunction. *Id.* at 590, 591; *c.f. Jarrow Formulas*, 2002 WL 1163624 at *10; *Hot Wax*, 191 F.3d at 826; *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2nd Cir. 1996). But, while courts recognize that "public health and safety concerns may well overwhelm other considerations in the application of laches," none have found that such concerns exist beyond the context of "health and medical products." *See Jarrow Formulas*, 2002 WL 1163624 at *10; *Conopco*, 95 F.3d at 194 (citing *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 568-69 (2nd Cir. 1971); *Morgenstern Chem. Co. v. G.D. Searle & Co.*, 253 F.2d 390, 393 (3rd Cir. 1958); *Am. Home Prods.*, 654 F. Supp. at 591-92; *Cole Chem. Co. v. Cole Labs., Inc.*, 118 F. Supp. 612, 617 (E.D. Mo. 1954)); *and see Hot Wax*, 191 F.3d at 826.

Clearly, Defendants never marketed DME Fix-A-Flat as a health or medical product. Further, the allegedly harmful product has been off the market for more than three years, and Plaintiff does not contend that Defendants are using misleading advertisements at present. Indeed, DME Fix-A-Flat had been withdrawn almost two years before Radiator Specialty filed suit. And, interestingly, no injunctive relief is requested to protect the "public health concerns" that Plaintiff professes to be shepherding. On this record, there is no evidence that Plaintiff's success or failure in this litigation will have any effect, whatsoever, on the public health. It follows that this argument does not present a bar to Defendants' laches defense. *See Jarrow Formulas*, 2002 WL 1163624 at *10; *Conopco*, 95 F.3d at 194; *American Home Products*, 654 F. Supp. at 592.

Radiator Specialty also contends that, even if Pandora is permitted to raise a laches defense, it cannot succeed because the elements of such a defense have not been met. (Plaintiffs' Response at 4). Pandora argues, in reply, that this suit was filed outside any applicable statute of limitations,

18

and it is therefore entitled to a presumption that laches precludes this litigation. (Pandora's Reply at 1, 3). Pandora insists, further, that Plaintiff has not provided evidence sufficient to rebut this presumption. (*Id.* at 3). On this matter, the court agrees with Pandora.

More than twenty years ago, this circuit adopted a "factual calculation" to determine whether laches has been raised appropriately: "LACHES = DELAY x PREJUDICE." *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.3d 1155, 1161 (5th Cir. 1982) (quoting 2 T. McCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 31.5 (1973)); *and see Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980). In other words, to support a laches defense, the greater the delay that is shown, the smaller the need to show that prejudice has resulted. *See Eastman Kodak*, 616 F.2d at 1326-27; *Hot Wax*, 191 F.3d at 824; *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F. Supp. 2d 546, 553 (S.D. Tex. 1998). Indeed, if the delay cited is great enough, "injury to the defendant is presumed, and the defendant need not necessarily produce additional evidence of prejudice." *Eastman Kodak*, 616 F.2d at 1326; *see also Jarrow Formulas*, 2002 WL 1163624 at *6; *Conopco*, 95 F.3d at 191; *Altech Controls*, 33 F. Supp. at 553. But delay is often a subjective matter, as it "must be determined in each case under its particular factual circumstances." *Eastman Kodak*, 616 F.2d at 1325. In certain instances, courts may find guidance by looking to an analogous statutory limitations period. *See id.* at 1326; *Jarrow Formulas*, 2002 WL 1163624 at *6; *Conopco*, 95 F.3d at 191; *Altech*, 33 F. Supp.2d. at 553. For example, in this circuit and others, whether a plaintiff's delay in bringing a claim for patent infringement is reasonable, is determined by reference to 35 U.S.C. § 286. *Eastman Kodak*, 616 F.2d at 1326 (citing *TWM Mfg. Co., Inc. v. Dura Corp.*, 592 F.2d 346, 348 (6th Cir.1979); *Gen. Elec. Co. v. Sciaky Bros., Inc.*, 304 F.2d 724, 727 (6th Cir. 1962); *Whitman v. Walt Disney Prods., Inc.*, 263 F.2d 229, 231 (9th Cir.

1958)); *Altech*, 33 F. Supp.2d. at 553 (citing *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed. Cir. 1998); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553-54 (Fed. Cir. 1996); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020,1035 (Fed. Cir. 1992)).  That statute provides that "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." *Eastman Kodak*, 616 F.2d at 1325 (quoting 35 U.S.C. § 286 (1976)).  The Fifth Circuit has held that, if a plaintiff's delay in filing a patent suit exceeds the statutory six-year period, then it is presumed both that the delay is unreasonable and that the defendant has suffered as a result.  *Id.* at 1326.  In that circumstance, it is the plaintiff who must "come forward with affirmative evidence of a lack of prejudice or a legally cognizable excuse for its delay in initiating litigation." *Altech*, 33 F.Supp.2d at 554.  On the other hand, if "the action is brought within the analogous limitation period, . . . [then] the defendant must show both that the delay is unreasonable and that he has suffered injury." *Eastman Kodak*, 616 F.2d at 1326.  The Fifth Circuit has held that a similar "analogy rule" applies when laches is raised as a defense in admiralty cases. *See Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215-16 (5th Cir. 1980).

Whether statutory limitation periods also inform the delay calculation when claims of false advertising under the Lanham Act are made, has not been addressed by this circuit.  Of those courts of appeals that have considered the matter, all have held that, because the Lanham Act does not contain an explicit limitations provision, the courts should be guided by analogous state limitations periods for fraud actions. *See Jarrow Formulas*, 2002 WL 1163624 at *6; *Hot Wax*, 191 F.3d at 820-21; *Conopco*, 95 F.3d at 191-92. *C.f. Lyons Partnership., L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001); *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d

1199, 1203 (11th Cir. 1997) (applying state fraud statutes to Lanham Act trademark infringement claims). *But see Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 963 (6th Cir. 1987); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365-66 (6th Cir. 1985) (applying state limitations periods for tortious injury to property in trademark context). Those courts have held that "if a § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *Jarrow Formulas*, 2002 WL 1163624 at *6; *and see Hot Wax*, 191 F.3d at 821; *Conopco*, 95 F.3d at 191. At least two district courts in this division have agreed with "the large majority of federal courts that have considered the limitations issue as to Section 43(a) claims [and] have held that these claims are most comparable to fraud claims and have applied the fraud limitations period." *Proctor & Gamble Co. v. Amway Corp.*, 80 F. Supp.2d 639, 658 (S.D. Tex. 1999), *rev'd in part on other grounds*, 242 F.3d 549 (5th Cir.), *cert. denied*, 122 S. Ct. 329 (2001); *Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 805-06 (S.D. Tex. 1996). Here, the parties agree that it is appropriate to "look to [the] applicable state statute of limitations," and to shift the burden of proof to Plaintiff if this suit was filed outside of the applicable period. (Plaintiff's Reformulated Response at 12; *and see* Pennzoil's Motion at 9; Pandora's Motion at 5-6). However, they disagree about which statute applies in this instance.

Plaintiff argues that the court should apply "Minnesota's six-year statute of limitations for fraud to the Lanham Act claims in this case." (Plaintiff RSC's Motion for Partial Summary Judgment on Statute of Limitations ["Plaintiff's Motion"] at 3, Docket Entry #63). Defendants, however, ask the court to apply the four-year Texas statute of limitations, which, they contend, precludes Plaintiff's claims. (Pennzoil-Quaker State Company's Response to Plaintiff's Motion to

Partial Summary Judgment on Statute of Limitations ["Defendants' Response"] at 2, Docket Entry #72; *see also* Pandora Manufacturing Inc.'s Adoption of Pennzoil-Quaker State Company's Response to Plaintiff's Motion for Partial Summary Judgment on Statute of Limitations, Docket Entry #78). Moreover, they argue that "the determination of which limitations period applies ultimately is unimportant," because the delay in filing suit exceeds the statutory period of either state. (Defendants' Response at 2). There is no question that Radiator Specialty filed this suit against Pandora seven years after it became aware of the alleged harms that are the basis of its Lanham Act claim. (*See* Transcript of Motions Hearing at 20). It follows that the § 43(a) claim falls outside of the limitations periods of either Minnesota or Texas. For that reason, Pandora is entitled to a presumption that laches applies. *See Eastman Kodak*, 616 F.2d at 1326; *Jarrow Formulas*, 2002 WL 1163624 at *6; *Hot Wax*, 191 F.3d at 821; *Conopco*, 95 F.3d at 191. However, Plaintiff may rebut this presumption by providing evidence to "show why the laches defense ought not be applied in the case." *Conopco*, 95 F.3d at 191; *see also Eastman Kodak*, 616 F.2d at 1326; *Altech Controls*, 33 F. Supp. 2d at 554. Here, Radiator Specialty argues it has raised "genuine issues of material fact on [both] the justifiable delay [and] prejudice issues." (Plaintiff's Response at 12).

Plaintiff advances three reasons that should excuse its failure to file suit before January 31, 2001. (*Id*. at 16-18). First, it posits that "a delay in filing suit is excused when a defendant is warned that a potential claim exists against [it]." (*Id*. at 16). Plaintiff argues that, because it objected to Fix-A-Flat's allegedly false "non-explosive" label in March 1994, Pandora "assumed the risk" that a suit might follow. (*Id*. at 17). In making this argument, Plaintiff relies on several trade-mark decisions which hold that "[a]ny acts after receiving a cease and desist letter are at the defendant's own risk." (Plaintiff's Response at 17 n. 96) (citing *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir.

22

1998); *Conan Props., Inc. v. Conans Pizza*, 752 F.2d 145, 152 (5th Cir. 1985); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 360 (S.D.N.Y. 1998)). However, each of those cases can be easily distinguished from this one. In *Tri-Star Pictures, Inc. v. Unger*, for example, the defendants "were repeatedly put on notice," on at least seven different occasions, that the plaintiff intended to sue to protect its trademark. 14 F. Supp. 2d at 360. Further, the warnings in *Tri-Star Pictures* were given *before* the defendant actually marketed the infringing product. *Id.* Likewise, in *Conan Properties v. Conans Pizza*, laches was precluded as a defense to the trademark claim because a cease-and-desist letter was sent to the defendant *before* it opened its new restaurant under an infringing name.[3] 752 F.2d at 151-52. Similarly, *Elvis Presley Enterprises v. Capece* involved two bars with names that infringed on the plaintiff's mark. 141 F.3d at 205. Because the plaintiff sent a cease-and-desist letter *before* the defendant opened the second bar, the court held that the second "location's opening [was] not relevant to the laches period." *Id.* In contrast, Radiator Specialty did not send its letter to Pandora until *after* DME Fix-A-Flat was already on the market. (*See* Wells Letter). Further, and more importantly, that letter did not state an intent to sue Pandora. (*See id.*). Instead, the letter merely voiced Plaintiff's "concern" that DME Fix-A-Flat was "misbranded" and requested "substantiation" that the product was indeed "non-explosive," as the label stated.[4] (*Id.* at 1).

It is noteworthy that at least one circuit court has held that a letter which accuses a manufacturer of false advertising cannot excuse the plaintiff's delay in filing suit.[5] *See Hot Wax, Inc.*

---

[3] That defendant was permitted, however, to assert laches with respect to restaurants that were already in operation before the letter was sent. *Conan Props., Inc. v. Conans Pizza*, 752 F.2d 145, 152 (5th Cir. 1985).

[4] In its letter, Radiator Specialty also stated that it had "shared [its] concerns regarding other DME-based tire inflator products with the [Consumer Products Safety] Commission ," and had "told them of [Pandora's] DME-based Super Fix-A-Flat® product." (Weiner Decl., Ex. 2: Letter from Jim Wells to Sam McGinnis [sic], Mar. 22, 1994).

[5] The Fifth Circuit has not considered this issue.

23

*v. Turtle Wax, Inc.*, 191 F.3d 813, 823-24 (7th Cir. 1999). In *Hot Wax, Inc. v. Turtle Wax, Inc.*, Hot Wax, a car wax manufacturer, complained in the mid-1970s that its competitor, Turtle Wax, was "falsely advertising certain products for automatic carwashes." 191 F.3d at 818. But Hot Wax did not act on this belief until 1993. *Id.* Then, "[b]etween 1993 and 1995, Hot Wax sent a total of five letters to the *Chicago Tribune*, Turtle Wax, and the Wisconsin Department of Agriculture, Trade and Consumer Protection concerning the marketing of Turtle Wax's products." *Id.* at 823. Finally, in 1997, Hot Wax sued Turtle Wax under Lanham Act § 43(a). *Id.* In response to Turtle Wax's claim that laches barred the suit, Hot Wax argued that the delay in filing suit was "excusable because it resulted from its attempts to resolve the claims without recourse to litigation." *Id.* The Seventh Circuit held, however, that "Hot Wax's sparse letter writing campaign [could] hardly be characterized as a serious attempt to resolve its concerns regarding Turtle Wax's products and advertising." *Id.* at 824. This court finds, likewise, that Radiator Specialty's single letter in 1994, which did not address litigation in any fashion, cannot be seen to excuse a seven-year delay in filing suit against Pandora.

Plaintiff's next contention is that it pursued other "non-judicial alternatives," in lieu of litigation, which serve to excuse its delay in filing suit. (Plaintiff's Response at 18). Radiator Specialty claims that it tried to resolve the § 43(a) claims with an "attempt to educate the market about Puncture Seal's benefits and DME-based tire inflators' dangers," in 1994-95.[6] (Plaintiff's Response at 17). Unfortunately, Plaintiff has not submitted any legal support for its argument that pursuing a particular marketing strategy is a reasonable alternative to litigation. This argument is unavailing. On the contrary, in fact, courts have held that "it cannot be equitable for a well-informed

---

[6] Plaintiff does not provide the details of this "educational" campaign.

24

merchant with knowledge of a claimed invasion of right, to wait and see how successful his competitor will be and then destroy with the aid of court decree, much that the competitor has striven for and accomplished." *Hot Wax*, 191 F.3d at 823 (quoting *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 4492, 498 (2nd Cir. 1961)).

Finally, Radiator Specialty claims that its delay is excusable because it, Pandora, Pennzoil, and another manufacturer of tire-inflator products, IQ Products Co. ("IQ"), "have been involved in three separate Lanham Act suits" since 1995, and "the time during which these suits were pending should not be counted for purposes of a laches delay." (Plaintiff's Response at 18). In this circuit, "where the plaintiff is engaged in other litigation involving the same [matter], to escape a defense of laches he must at least inform the potential [defendant] of his intent to pursue his rights." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1328 (5th Cir. 1980). Courts have also held that such a claimant must show that "there is adequate notice to the alleged [wrongdoer] of the other proceeding." *Altech Controls*, 33 F. Supp. 2d at 554 (quoting *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573 (Fed. Cir. 1987)). Here, Radiator Specialty has provided evidence to show that it brought Lanham Act claims against IQ in 1995, alleging that "IQ had falsely labeled its DME-based tire inflator as . . . 'non-explosive.'" (Plaintiff's Response at 6) (citing Weiner Ex. 5: Docket Sheet for *IQ Products Co. v. Radiator Specialty Co.*, H-95-576 (S.D. Tex. 1995)). However, there is no indication that Pandora was notified of Radiator Specialty's intent to pursue a similar Lanham Act claim against it, or that Pandora was ever even made aware of the action against IQ. On this record, Plaintiff has not raised a genuine fact issue to rebut the presumption that it was unjustified in waiting seven years before it initiated suit against Pandora. *See Eastman Kodak*, 616 F.2d at 1325, 1328; *Altech Controls*, 33 F. Supp. 2d at 554.

As to the second factor essential to a laches consideration, Plaintiff insists that Pandora cannot prove that it suffered any prejudice as a result of the delay. (Plaintiffs' Response at 19). However, because there is no showing that the delay is excusable, laches is presumed to apply and it is Radiator Specialty's burden to show that Pandora was *not* injured. *See Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215-16 (5th Cir. 1980); *Eastman Kodak Co.*, 616 F.2d at 1326; *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, — F.3d —, 2002 WL 1163624, *6 (9th Cir. June 4, 2002); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2nd Cir. 1996); *Proctor & Gamble Co. v. Amway Corp.*, 80 F. Supp.2d 639, 658 (S.D. Tex. 1999); *Altech Controls*, 33 F. Supp. 2d at 554; *Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 805-06 (S.D. Tex. 1996). On this topic, the Fifth Circuit has

> recognized a variety of factors which constitute prejudice to the defendant because of plaintiff's delay. Chief among these are the fact that important witnesses have died, that the memories of other witnesses have been dulled, that relevant records have been destroyed or are missing, and that the defendant has made heavy capital investments in its facilities in order to expand production connected with the alleged [mislabeled] article.

*Eastman Kodak Co.*, 616 F.2d at 1326-27; *see also Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd.*, 40 F.3d 698, 710 (5th Cir. 1994) (quoting *Order of R.R. Telegraphers v. R.R. Express Agcy., Inc.*, 321 U.S. 342, 348-49 (1944) for the proposition that laches is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared"). Here, Pandora has shown that the product at issue is no longer manufactured or marketed, and that many of the "documents directly related to Fix A Flat . . . were lost, destroyed, or otherwise dispersed." (Pandora's Motion at 8, 9; *Id.*, Ex. A: Affidavit of Michael J. Borka ["Borka Aff."] ¶¶ 5, 6). Pandora

also points out that, without the records or a sample of the product, it is left to rely on the "fading memory of witnesses who, if they can be found, will be called upon to testify regarding specific events up to seven years ago." (Pandora's Motion at 8).   Michael Borka, the current president of Pandora, has testified by affidavit that Pandora terminated all individuals "with knowledge of Fix A Flat sales and marketing" after August 15, 1998.   (Borka Aff. ¶ 4).   Pandora contends that its "ability to produce these witnesses is impaired if not lost." (Pandora's Motion at 8).   Moreover, Pandora argues that it "was further prejudiced by its continued investment of large sums of money in the Fix-A-Flat product through marketing and development." (Pandora's Response at 3).

In response to this showing, Radiator Specialty asserts that "many of the witnesses whose testimony will be important in this case" are available for trial and "have been deposed just recently in the IQ v. Snap case." (Plaintiff's Response, Ex. EE: Declaration of William T. Reid ¶ 4). However, Radiator Specialty has made no effort to rebut Pandora's arguments that many relevant documents are unavailable and that the delay will result in economic harm if the claim is allowed to proceed at this late date.   From this record, Plaintiff has not raised a question on whether the seven-year delay resulted in no prejudice to Pandora.   Accordingly, the court finds that there is no genuine issue of material fact on the matter of laches. *See Nat'l Ass'n of Gov't Employees*, 40 F.3d at 710; *Eastman Kodak Co.*, 616 F.2d at 1326; *Jarrow Formulas*, 2002 WL 1163624 at *6; *Conopco*, 95 F.3d at 191; *Altech Controls*, 33 F. Supp. 2d at 554.   It is RECOMMENDED that Pandora's motion for summary judgment on the Lanham Act claim against it be GRANTED.

### 2. *Pennzoil's Claim of Laches*

Pennzoil also contends that the Lanham Act claims against it are barred by the doctrine of laches. (Pennzoil's Motion at 1, 7).   At the outset, Pennzoil hopes to persuade the court that the period of delay that occurred from the date that it purchased Fix-A-Flat until suit was filed, should

be "tacked on" to "the period of Pandora's ownership" in considering its laches defense. (*Id.* at 10 n.4; *and see* Pennzoil's Reply at 9-10). There is no dispute that seven years elapsed from the time Radiator Specialty knew of Pandora's alleged wrongful conduct to the time it filed suit against these Defendants. Pennzoil asks the court to deem all of those years as the relevant period of delay in weighing its equitable defense. (*Id.* at 10). If that is so, then there is a presumption that laches exists. In response, Radiator Specialty argues that "laches is a 'personal defense' and one that is generally not transferable." (Plaintiff's Response at 13) (quoting *Hughes Aircraft Co. v. Gen. Instrument Corp.*, 275 F. Supp. 961, 973 (D.R.I. 1967), *rev'd on other grounds*, 399 F.2d 373 (1st Cir. 1968). It claims that its action against Pennzoil "did not accrue until November 1997," when Pennzoil purchased the Fix-A-Flat line. (*Id.*). From that date, Plaintiff contends that it "brought this lawsuit . . . just over three years" later, which is "well within any applicable limitations period." (*Id.*). Plaintiff insists that, because the suit against Pennzoil can be shown to have been filed within the applicable limitations period, a presumption exists that laches does not attach. (*Id.*). It argues further that Pennzoil has not rebutted this presumption that the suit was timely filed. (*Id.*). Pennzoil replies that tacking is permitted because it merely continued Pandora's allegedly unlawful behavior, and because the entire product line associated with those alleged bad acts was transferred to it at the time of the sale. (Pennzoil's Reply at 3-4).

In considering whether Pennzoil should receive the benefit of Plaintiff's delay in filing suit against Pandora, the structure of the Fix-A-Flat sale is crucial. It is undisputed that, on November 4, 1997, Pennzoil purchased "all right, title and interest" in Snap, including "the entire Fix-A-Flat product line and all of the good will associated therewith." (Pennzoil's Reply at 4; *Id.* Ex. A: Asset Purchase Agreement by and among SAP Acquisition Corp., Snap Products, Inc. and Pennzoil Products Company, Nov. 4, 1997, ¶ 2.1). Pennzoil claims that because it "is a transferee of an entire

business or its assets," any delay to suit that occurred during the prior ownership of that business inures to its benefit, for the purpose of laches. (Pennzoil's Reply at 4) (quoting *R2 Med. Sys., Inc. v. Katecho, Inc.,* 931 F.Supp. 1397, 1412 (N.D. Ill. 1996)).

Although the Fifth Circuit has not decided any similar tacking issues, other circuits have.[7] Among those that have addressed that question, the majority of circuit courts have consistently allowed tacking of time periods in evaluating delays in pursuing patent or trademark infringement claims. *See* 5 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, § 31:26 (4th ed. 2002). In fact, in the context of trademark infringement, it is well-settled that "[t]he defendant-assignee of a mark owner may . . . 'tack on' its use to its assignor's use" to assert a laches defense. *Id.* The intent is to show that the plaintiff was, or should have been, aware that the alleged infringement was begun by the assignor and merely continued by the defendant-assignee, and to show that the plaintiff unreasonably delayed in asserting his claim against both. *See generally id.* To this end, courts have held that such tacking is permitted "only when the mark is assigned in conjunction with the sale of the goodwill of the business to which it is attached." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 367 (6th Cir. 1985) (citing *PepsiCo, Inc. v. Grapette Co.,* 416 F.2d 285, 286-87 (8th Cir. 1969)); *see also Gaffrig Performance Indus., Inc. v. Livorsi Marine, Inc.,* 2001 WL 709483, *8 (N.D. Ill. Jun. 25, 2001). If no goodwill is transferred along with the trademark, then a "consumer might buy a product thinking it to be of one quality or having certain characteristics and could find

---

[7] In *Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188, 206 n.10 (5th Cir. 1998), a case involving trademark infringement claims under both common law and the Lanham Act, the Fifth Circuit stated, "By no means do we voice an opinion on whether this type of tacking is ever proper, especially where the period of delay is broken by the mark's not being used in commerce due to a business failure." The court noted, in particular, that the period of non-use was relevant in that case because it may have interrupted "the period of continuous use required to establish the mark as incontestable under 15 U.S.C. § 1065." *Id.* at 205 n.9. In this instance, the marketing strategies for DME Fix-A-Flat were "used in commerce" continuously during the period following the product-line transfer from Pandora to Pennzoil.

it only too late to be another." *PepsiCo*, 416 F.2d 285 at 289. It is the mark-holder's property interest in that goodwill which is protected by the trademark laws. *See id.* at 289.

In patent cases, likewise, courts have permitted tacking if it is shown that there has been a "formal transfer of the technology and goodwill of the accused product." *R2 Med. Sys.*, 931 F.Supp. at 1412; *and see Security and Access (Electronic Media) Ltd. v. Nokia, Inc.*, 1997 WL 158308, *8 (M.D. Fla. Mar. 24, 1997) *Raber v. Pittway Corp.*, 1994 WL 374542, *3 (N.D. Cal. Jul. 11, 1994); *Autoclave Eng'rs, Inc. v. Duriron Co.*, 190 U.S.P.Q. 125, 132 (E.D. Penn. 1976); *Am. Home Prod. Corp. v. Lockwood Mfg. Co.*, 173 U.S.P.Q. 486, 493 (S.D. Ohio 1972), *aff'd*, 483 F.2d 1120 (6th Cir. 1973); *Celastic Corp. v. McClellan Shoe Specialty Co.*, 15 F. Supp. 1048, 1050 (D. Del. 1936). This is because, "[i]n such circumstances, the transferee effectively has assumed the transferor's identity." *R2 Med. Sys.*, 931 F.Supp. at 1412. It is true, as Plaintiff notes, that the court in *Hughes Aircraft Co. v. Gen'l Instrument Corp.*, did not allow tacking in that instance, ruling that "laches . . . is a personal defense." 275 F. Supp. 961, 973 (D.R.I. 1967), *aff'd in part, rev'd in part on other grounds*, 399 F.2d 373 (1st Cir. 1968). However, no other court has followed *Hughes* for this proposition. Indeed, at least one district court specifically refused to do so, pointing out that the case that *Hughes* relied upon as precedent did not involve a transfer of the infringing product but, instead, "involved a lessee attempting to 'tack on' the alleged infringement by its lessor." *Autoclave Eng'rs*, 190 U.S.P.Q. at 132 (discussing *Hughes*, 275 F. Supp. 961, and *Pierce v. Am. Communications Co.*, 111 F. Supp. 181, 190 (D. Mass. 1953)). *C.f., Raber*, 1994 WL 374542 at *3 ("[D]isallowing tacking for a successor infringing corporation 'is not in the ends of justice' and promotes 'form over substance.'") (quoting *Lockwood Mfg. Co.*, 173 U.S.P.Q. at 493 (S.D. Ohio 1972)); *Celastic Corp.*, 15 F. Supp.

at 1050 (tacking is appropriate where "defendant purchased the entire assets and goodwill" of predecessor).

Here, Plaintiff argues, without providing any support in the law, that tacking should not be "extended to Lanham Act false advertising claims." (Plaintiff's Response at 14). After a review of all of the published opinions on this matter, the court cannot identify a useful distinction between a laches defense against a classic Lanham Act trademark infringement claim, and one raised in response to an unfair competition claim under the same Act. On the contrary, the Second Circuit has held that, "because the Lanham Act universally protects against consumer confusion, [there is] no distinction between trademark cases and misleading advertisement cases for the purpose of laches." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2nd Cir. 1996). Here, it is reasonable to conclude that Pennzoil has "effectively . . . assumed [Pandora's] identity," with respect to the Fix-A-Flat product line. *See R2 Med. Sys.*, 931 F.Supp. at 1412. Pennzoil is entitled, therefore, to tack the delay period during which it owned the product to the period of delay during Pandora's ownership. *See Tandy Corp.*, 769 F.2d at 367; *PepsiCo*, 416 F.2d at 286-87; *Nokia*, 1997 WL 158308 at *8; *R2 Med. Sys.*, 931 F.Supp. at 1412; *Raber*, 1994 WL 374542 at *3; *Autoclave Eng'rs*, 190 U.S.P.Q. at132; *Lockwood Mfg.*, 173 U.S.P.Q. at 493; *Celastic Corp.*, 15 F. Supp. at 1050. Accordingly, seven years elapsed from the time that Plaintiff knew of its Lanham Act claims and the time that it filed suit against Pennzoil. As this seven-year delay is outside of any limitations period suggested by the parties, it follows that laches is presumed, and Radiator Specialty bears the burden to rebut that presumption. *See Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215-16 (5th Cir. 1980); *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, — F.3d —, 2002 WL 1163624, *6 (9th Cir. June 4,

2002); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2nd Cir. 1996); *Proctor & Gamble Co. v. Amway Corp.*, 80 F. Supp.2d 639, 658 (S.D. Tex. 1999); *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F. Supp. 2d 546, 554 (S.D. Tex. 1998); *Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 805-06 (S.D. Tex. 1996).

In anticipation of such a finding on "tacking," Plaintiff also claims that Pennzoil is "estopped from asserting laches because of its continued promises of a long-term business relationship." (Plaintiffs' Response at 19) (citing *Clymore v. U.S.*, 217 F.3d 370, 377 (5th Cir. 2000). Radiator Specialty argues that "by entering into a Covenant Not to Sue," Pennzoil "expressly induced [it] to withhold filing suit" until the statutory limitations period had run. (*Id.*). Apparently, Plaintiff contends that Pennzoil contributed to its delay through "willful, egregious or unconscionable conduct" that creates a bar to the laches defense, due to Defendant's "unclean hands." *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 826 (7th Cir. 1999); *and see Conan Props., Inc. v. Conans Pizza*, 752 F.2d 145, 150 (5th Cir. 1985). Pennzoil insists, however, that it did not contribute to Plaintiff's delay, "because the covenant not to sue dealt with . . . patent infringement instead of false advertising." (Pennzoil's Reply at 13). Further, Pennzoil has presented evidence to show that "in the year-and-a-half that [the parties] were operating under the Covenant and negotiating a potential licensing agreement, RSC never raised the issue of [Pennzoil's] alleged false advertising."[8] (Pennzoil-Quaker State Company's Reply in Support of its Motion on Laches and Choice-of-Law at 9 ["Pennzoil's First Reply"], Docket Entry #82, *incorporated by reference in* Pennzoil's Reply at 13) (citing Pennzoil's Motion, Ex. 3: Affidavit of Paul B. Siegel ["Siegel Aff."] ¶ 9). Radiator

---

[8] Although the court notes that Plaintiff objected to this evidence, affidavits have long been considered appropriate evidence under Rule 56(e). *See, e.g. Giles v. General Elec. Co.*, 245 F.3d 474, (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *F.D.I.C. v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1254 n.12 (5th Cir. 1992). Certainly, Plaintiff had the opportunity to controvert the Siegel Affidavit in its response to Pennzoil's motion.

Specialty's lawyer has stated that the company preferred to "enter into a long-term beneficial business relationship with [Pennzoil] on a safer product rather than to resort to litigation." (*See* Weiner Decl. ¶ 42). While commendable, that sentiment does not raise an issue on whether Pennzoil induced Plaintiff not to file a suit for false advertising. . On this record, Plaintiff has not shown that a genuine issue of material fact exists on Pennzoil's alleged "unclean hands," and so that Defendant is not barred from asserting a laches defense.

Even if the "promise of a long-term licensing deal" does not estop Pennzoil from raising a laches defense, Plaintiff contends that the alleged promise "justified" its delay in filing suit. (Plaintiff's Response at 18). Plaintiff claims that, under the relevant precedent, "the period of time during which conciliation efforts were ongoing should not be counted against [it] in calculating the period of delay," and so Pennzoil's laches defense must fail. (*Id.*) (quoting *Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd.*, 40 F.3d 698, 708 (5th Cir. 1994)). In reply, Pennzoil contends that conciliation efforts must involve "the same subject matter as the later filed suit," yet the licensing deal had "nothing to do with . . . false advertising claims." (Pennzoil's First Reply at 9). On this matter, it is undisputed that Radiator Specialty agreed, in the "Covenant Not to Sue," that it would not "make any claim, or initiate a lawsuit or other legal action" against Pennzoil with respect to its manufacture or sale of fourth-generation Fix-A-Flat made with 134(a), "as that may relate to the patent" for that propellant. (Covenant Not to Sue ¶ 2.10; *see also* ¶¶ 1.01, 1.03; *and see* Second Amended Complaint ¶ 95). Further, the parties to the covenant agreed that they were "better served by a mutually beneficial business relationship rather than directing substantial resources to issues of whether [Pennzoil's] *new formula* for non-flammable aerosol tire inflator and sealer compositions will be covered by claims in a [patent] reexamination certificate." (Covenant Not to

33

Sue at 1) (emphasis added). Nowhere does the covenant make reference to false advertising, or to the third-generation DME Fix-A-Flat that is the subject of this lawsuit. (*See, generally, id.*).

In addition, in the case that Plaintiff cites to support its position, the "conciliation efforts" were directly related to the dispute on which the litigation was based. *See Nat'l Ass'n of Gov't Employees*, 40 F.3d at 703 (holding that, in a Title VII lawsuit, the measurement of delay should not include time that the employee spent in an attempt to resolve discrimination claims with his employer). Plaintiff has provided no legal support, and this court has not found any, for the notion that negotiations on one matter excuse a delay in litigating an unrelated issue. On the contrary, this circuit has held that laches is an appropriate defense when the plaintiff's course of action "was one reasonably calculated to . . . lull th[e] defendant into a sense of security, and the belief that plaintiff[] would not sue." *Shaffer v. Rector Well Equipment Co.*, 155 F.2d 344, 346 (5th Cir. 1946). Here, it is reasonable to conclude that it is Pennzoil, rather than RSC, that might have been "lulled" by the covenant into a belief that Radiator Specialty would not sue it, for any reason. *See id.* Because Plaintiff has not advanced "a legally cognizable excuse for its delay in initiating litigation" against Pennzoil, it has not rebutted the presumption that it "slept on its rights," with respect to that Defendant. *See Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F. Supp. 2d 546, 554 (S.D. Tex. 1998). On this record, Radiator Specialty has not raised a genuine issue of material fact on whether its delay was reasonable.

Finally, Radiator Specialty claims that, even if an unreasonable delay occurred, Pennzoil has suffered no harm because of it. (Plaintiff's Response at 20). Pennzoil argues in reply that it "has been prejudiced in several respects." (Pennzoil's Reply at 15). First, it points to evidence that Plaintiff's "decision to delay filing suit until three years after [Pennzoil] purchased the Fix-A-Flat

product line compromised [its] negotiating position," because the existence of litigation involving the product "would have changed [its] analysis of the purchase." (Pennzoil's Motion at 15; Siegel Aff. ¶ 3). Second, Pennzoil argues that it would not have entered into the Covenant Not to Sue if it had "known that RSC intended to file a false advertising suit . . . seeking millions of dollars in damages." (Pennzoil's Motion at 15). Third, Pennzoil contends that if this suit had been pursued "in a timely manner, [then] defendants' potential liability for damages and profits would be drastically less," as it would not have invested "time and money in the third-generation Fix-A-Flat formula." (*Id.* at 14; Pennzoil's First Reply at 10). Finally, Pennzoil reiterates the argument, first raised by Pandora, that the faded memories and lost evidence associated with Plaintiff's seven-year delay will prejudice Pennzoil's "ability to mount an adequate defense at trial." (Pennzoil's Motion at 12-13).

To rebut these contentions of prejudice, Plaintiff argues merely that Pennzoil "knowingly assumed the risk it now bears in this litigation" because it "recognized that DME Fix-A-Flat was explosive," but purchased the product line despite that fact.[9] (Plaintiff's Response at 20). Even if this allegation is correct, and Pennzoil did know that Fix-A-Flat was dangerous, it does not follow that Pennzoil also knew that Radiator Specialty intended to, one day, sue it for false advertising. Plaintiff has not provided any evidence to contradict Pennzoil's claims of prejudice. On this record,

---

[9] To support this allegation, Plaintiff argues that "[d]uring its due diligence [Pennzoil] learned that numerous lawsuits involving DME Fix-A-Flat had been filed, several of which alleged explosive injury." (Plaintiff's Response at 7) (citing *id.*, Ex. R: Fax from Mike Borka to Paul Siegel, Sept. 15, 1997). Plaintiff alleges further that Pennzoil was aware of a report by the Better Business Bureau that ordered Pandora "to cease advertising DME Fix-A-Flat as non-flammable or safe." (*Id.*) (citing Ex. S and T: BBB Decision with hand-written notes, Oct. 9, 1997). Moreover, Pennzoil reportedly knew that Pandora had conducted tests of DME Fix-A-Flat in 1994, which showed that the product "was capable of producing violent explosions." (*Id.*) (citing Ex. M: Letter from C. James Dahn to Paul Hughett, May 25, 1994, p.3; Ex. U: Transcript of Videotaped Examination Before Trial of Nonparty Witness, Troy H. Scriven, Sept. 18, 2000, pgs. 87-92; Ex. V: Transcript of Video Deposition of Don Johnson, Oct. 20, 1999, p. 179).

the presumption of laches has not been rebutted, and it is RECOMMENDED that Pennzoil's motion to dismiss Plaintiff's Lanham Act claim be GRANTED.

### State Law Claims

If Plaintiff's federal cause of action is dismissed, then this court loses its federal question jurisdiction. *See* 28 U.S.C. § 1331 (2002). Both Radiator Specialty and Pandora are incorporated in North Carolina, and so diversity jurisdiction is lacking as well. *See id.* § 1332(a)(1), (c)(1); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 (5th Cir. 2001). Although no party has argued for dismissal on that basis, the question of subject-matter jurisdiction may be raised at any time. *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 697 (5th Cir. 1997); *Johnston v. U.S.*, 85 F.3d 217, 218 n.2 (5th Cir. 1996). It is well-settled that, "[w]hen all federal claims are dismissed, the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims." *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 947 (5th Cir. 1995); *and see Batiste v. Island Records, Inc.*, 179 F.3d 217, 226 (5th Cir. 1999); *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998). Here, if it so chooses, the court may entertain such "supplemental jurisdiction" over Plaintiff's state common law and statutory claims, as they do arise from the same case or controversy as the Lanham Act allegations. *See* 28 U.S.C. § 1367; *Hubbard*, 42 F.3d at 947. But generally, in this circuit, courts "decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste*, 179 F.3d at 227 (citing *McClelland*, 155 F.3d at 519; *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)). Even though this rule is "neither mandatory nor absolute," and a court must evaluate "the specific circumstances of the case at bar" to determine whether an exercise of supplemental jurisdiction is appropriate, in doing so, the court must "consider both the statutory provisions of 28

36

U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350-51, 108 S. Ct. 614, 98 L. Ed.2d 720 (1988), and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed.2d 218 (1966)." *Batiste*, 179 F.3d at 227; *and see McClelland*, 155 F.3d at 519-20.

> The supplemental jurisdiction statute, 28 U.S.C. § 1367(c), provides that
>
> The district courts may decline to exercise supplemental jurisdiction over a claim . . . if—
> (1)    the claim raises a novel or complex issue of State law,
> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)    the district court has dismissed all claims over which it has original jurisdiction, or
> (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, Plaintiff has brought its state law claims under the law of Minnesota. Defendants argue that, under Minnesota choice-of-law principles, Texas law should apply because Minnesota "has no unique connection to this litigation" and so "does not have a significant public policy interest in applying its law to this case." (Pennzoil's Motion at 18 n.11, 22; *see also id.* at 20-21). Further, Defendants suggest, without so arguing, that Plaintiff has not stated a cause of action under Minnesota law. (*Id.* at 16 n.9). This court finds that these questions are best answered by the Minnesota courts and that the first § 1367(c) factor weighs in favor of dismissing this action. The second and third factors both strongly favor dismissal as well. State law claims clearly predominate in this case, as they are the only causes of action that remain. And this court discerns no "compelling reasons" that would bring the fourth factor into play. In sum, the test set out in § 1367(c) directs that Radiator Specialty's action be dismissed.

As to "judicial economy, convenience, fairness, and comity," the Supreme Court has stated that the "balance of these factors indicates that a case properly belongs in state court, . . . when the federal-law claims have dropped out of the lawsuit in its early stages." *Cohill*, 484 U.S. at 350, *quoted by McClelland*, 155 F.3d at 520. To determine what constitutes the "early stages" of a lawsuit, the Fifth Circuit has held that "the amount of judicial resources that the case has consumed is most important for our analysis as an indication of the familiarity of the forum with the case and its ability to resolve the dispute efficiently." *Batiste*, 179 F.3d at 228 (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992)). Here, the case has been pending in the federal district courts for eighteen months, but has been before this court for less than one year.[10] No trial date has been set, and the instant motions for summary judgment are the only ones that have been considered in this case. Further, depositions were limited pending a decision on the issue of laches. (*See* Transcript of Motions Hearing at 24, 28-29, 31). Finally, this court is not more able to "resolve the dispute efficiently" than are the courts of Minnesota. *See Batiste*, 179 F.3d at 228; *Parker & Parsley*, 972 F.2d at 587. For these reasons, "judicial economy, convenience, fairness, and comity" weigh heavily in favor of declining jurisdiction. *See Cohill*, 484 U.S. at 350; *McClelland*, 155 F.3d at 520. It is, therefore, RECOMMENDED that the district court exercise its discretion and DISMISS Plaintiff's state-law claims, without prejudice.

**Conclusion**

Based on the foregoing, it is RECOMMENDED that the motion for summary judgment by Defendants Pandora Manufacturing, Inc. and Pennzoil-Quaker State Co. be GRANTED, as to Plaintiff's Lanham Act claim.

---

[10] Radiator Specialty filed its complaint in the Minnesota district court on January 31, 2001. (Docket Entry #1). The case was transferred to the Southern District of Texas on June 29, 2001. (Docket Entry #35). Originally, it was assigned to the Honorable Nancy F. Atlas. (Docket Entry #36). It was then reassigned to the Honorable Vanessa D. Gilmore on August 13, 2001. (Docket Entry #45).

It is further RECOMMENDED that Defendants' motions for summary judgment on the Minnesota statutory causes of action be DENIED.

It is further RECOMMENDED that Plaintiff's claims under the Minnesota Deceptive Trade Practices Act, Minnesota Unlawful Trade Practices Act, and Minnesota Consumer Fraud Act, as well as the Minnesota common-law claim for wrongful interference with prospective business relations, be DISMISSED, without prejudice. Plaintiff should be given leave to re-file in state court within thirty (30) days.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten (10) days from the receipt of it to file written objections thereto, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 80-5, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, **and** to the chambers of the undersigned, Room 7007.

The Clerk shall enter this Order and provide a true copy to all counsel of record.

SIGNED at Houston, Texas, this ____ day of July, 2002.

MARY MILLOY
UNITED STATES MAGISTRATE JUDGE